Next case up is 4090448 Barnes v. Beach House. For the appellant is Edward Dutton, UASA. And for the appellee, Adam Chaddock. Mr. Dutton, you may proceed, sir. Good afternoon. Counsel. Mr. Chaddock, my name is Ed Dutton. I represent the Decatur Park District. Let me begin, truly, by thanking the court. I know this comes before you on a certified question, which doesn't happen very often. I appreciate the fact that Judge Weber said, I have an issue here that I want to send to the appellate court and the appellate court for it, and said, yes, we will take that up. Thank you. Also, for the chance to argue, I do a fair bit of appeals. I don't always get the opportunity to argue, and I appreciate that. And I will not even try to take up all of your time today. The case comes before the court for statutory interpretation. The issue is the application and interpretation of 3106 of the Tort Immunity Act. The facts are not disputed. The facts are straightforward. We have, within Nelson Park, and in fact I included a photo of it, I believe it's A69, the parties that addressed that with the trial court. I'm not sure if it made it, let me add a little tangent here, I'm not sure if the photograph actually made it fully before the court entered the record. I checked with the clerk. They thought it was a trial exhibit, so they didn't actually bind it with the record. They included an envelope in the back. But the clerk assured me that it did come to the court. So I didn't want the court to think I was throwing photographs in my appendix that hadn't been part of the trial court record. What we have is we have a common situation, actually. This happens in park districts, forestry districts across the state. We will have a golf course, for example, and it's recreational property. And within the golf course, a pro shop, for example, the forestry district, park district, village, will have an outside entity come in and run the pro shop. Or they have a restaurant, like we have here, and an outside entity will come in and run the restaurant, pursuant to a written agreement. Very, very common setup. No case has ever addressed, as I was quite straightforward when I set this up before the court, no case has ever addressed this precise factual pattern. But having said that, there is more than enough factual information of the record, including what's alleged in the third-party complaint, and then the written agreements attached to it, to establish that this is completely within the confines of a park, right there, that it's good enough to apply 3106. But on top of that, it supplies access to this wooden walkway, supplies access to both the restaurant, which is recreational in nature, and to bathrooms within the building. Because of that, as we know under established precedent, that is, again, sufficient to bring it within 3106. Most importantly, no case has ever held that any part of a park within the confines of a park is outside of 3106. Part of the reason why Judge Weber's ruling was sort of outside the fold was because Judge Weber was essentially saying, well, I'm going to find here that your motion to dismiss is denied. I think that even though this is within a park, this is outside of 3106. And that's where I stood up and said, Judge Weber, that's really interesting. No case has ever held that. There's no support for that in the language of the Act. I think this is an issue that we need to address with the appellate court. He said, you know, I think I agree. That's how it comes before you. I believe there's three, at least, avenues or areas that would support application of 3106 in this case. The first is the written agreement itself, which is attached to the third-party complaint and made an exhibit and therefore referenced therein. So it's part of the pleadings. And that written agreement confirms that the restaurant is specifically being created and given this space within the Park District's building to promote the health, That's what it's there for. That agreement right there is sufficient to establish the application of 3106. The fact that it has a second-floor bathroom in the restaurant, and if you look at the photograph, the bathroom is the same floor as the restaurant within there. Under Annan and under Brown, as I've cited to the court, the fact that you can have a non-recreational area, like a bathroom or a shower within a park, that furthers the public's use of that recreational area, the park itself, is enough to apply 3106 immunity. Separate from the agreement is the language of the statute itself. I cited three provisions of the Tort Immunity Act. 1101.1 is simply the opening part of the act, which confirms that the act is there to promote the interests of recreation and of public energy generally. It supplies only immunities and defenses. That's all I'm going to say on 1101. But the other two key statutory provisions of the Tort Immunity Act that are in play here are 3101, and that defines public property. Very important because there's no carve-out or exception, the words I used in my brief, for public property which is a portion of it is leased. It doesn't say public property is property owned or leased by a local public entity, such as the park district, but shall not include any portion of property that has been leased or rented out. That's critical because the definition, we go by the statutory language, the definition of 3101 clearly brings Nelson Park, the park that's at issue here, within the definition of public property for purposes of 3101. Then we lead into 3106, which is the critical statute here. And 3106 says, as the court knows, neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property. Let's stop there. The allegations in this case, which is a third-party complaint for contribution against the park district, are dealing with a condition of public property. That brings it within 3106. We've met that part of the definition. The second part is to be used for recreational purposes, and the third part is including but not limited to. It goes and explains some of the recreational types of property. The key part of the included but not limited to is that list is not exhaustive. That list is demonstrative, but it's not inclusive. And so we have parks. We have Nelson Park here. We have buildings, which is pavilion number three, and or an enclosed recreational facility, which is pavilion number three. Based upon the plain wording of 3106, there is no question whatsoever that the Nelson Park itself, the pavilion number three within Nelson Park, and then the restaurant and bathroom area within pavilion number three all fall within the definition of recreational property under 3106. When we then take the case law, which is interpreted and applied in 3106, and I've cited more than a dozen cases, I'm certain, those cases uniformly hold that if you have a condition of public property which falls within the confines of a park, that is going to be afforded 3106 immunity, even if that particular piece of property is not intended itself for recreation. Did you argue the Wallace case in the trial, Judge? Yes. In fact, the Wallace case was the lead case study. What did the court say in explaining why the court apparently didn't think it applied? Because Judge Weber said that Wallace dealt with a whole bunch of commercial enterprises at Navy Pier, but here we have only one. And that's why I argued to Judge Weber, well then, wait a minute though, that makes this case a subset of Wallace. And he said, well no, I think it's factually distinct, because there you had a lot which provided access to a whole bunch of different commercial and retail facilities. Here it's just one. I think that's different. That was his argument for Wallace. Nothing more, nothing less. That was it. Is that the position the Beach House argued? Essentially he accepted that argument? I don't believe the Beach House actually made that argument. I believe the Beach House made instead two different arguments, neither of which was that. The Beach House instead argued, one, that you have to be able to show that recreation occurred on the walkway or stairway, and then the second argument was that 3103, which is the design statute, brings it out of 3106. So we can talk about the lower court's ruling because the arguments are the same here. I had come back with, both in oral argument and in my motions before the trial court, I had come back with the number of cases where 3106 has been applied to a whole bunch of different kinds. If we were going to say even if this walkway is not recreational, let's talk about the number of cases where 3106 is applied within the confines of a park to non-recreational type property. So I talked about Conaway, which has a drainage ditch that's as far from recreation as you get. I talked about Kaiser, which was the walkway heading into the community center. I talked about the Diamond Case, which Springfield Convention Center, we can see out the window here, which was the Seventh Circuit Court of Appeals. The Supreme Court adopted that and approved it in a number of cases, including above. I talked about each one of those cases, Kern Bower, the Cable Gate, all the rest, because my whole point was it doesn't matter from a 3106 standpoint whether we can show or have to show that the particular walkway at issue here was actually used for recreation. The important point was it is within the confines of a public park, and therefore it falls within the immunity of 3106 in all of the cases about that. And then I argued it actually from the other side, and I did that before with this court as well. And that is the Beach House has cited two 5th District cases, Capps and Batson, both of those school district cases, where the court has said, well, we're going to find that the immunity may not extend as far as a sidewalk, for example, outside of recreational property. And, in fact, in Capps and Batson, the court used the term bounded. As long as the condition is bounded within recreational property, such as a park, the Capps and Batson 5th District Court would go with that. I don't need to try to square that with the Supreme Court's finding in Sylvester, where the Supreme Court said the park district couldn't prove up that actually the sidewalk was within the confines of Burnham Park, and yet the Supreme Court still applied 3106 immunity. I don't need to resolve that conflict for this case, because what's important here is, based upon the pleadings, the undisputed facts that are before the court, there's no question that this building, Pavilion Number 3, and the walkway within that pavilion are within the confines completely of Nelson Park. Nelson Park is a recreational property. Therefore, that potential dispute down the road between Capps, Batson, and the Supreme Court's ruling in Sylvester does not come into play here. So my position, fairly straightforward, is based upon settled precedent, based upon the language, purpose, and intent of the Tort Immunity Act to protect local public entities from negligence liability, to promote the creation of recreational areas, and based upon the wording of the lease agreement itself, which does everything to show that this restaurant is specifically there for the health, the benefit of patrons of the park, and, in fact, even requires the restaurant to provide access whenever the restaurant is open to the bathrooms to any member of the public that wants to come in. Because of those reasons, this falls completely within existing case law. There's no case that would ever carve out a portion of a public park and say, it doesn't apply to this portion of a public park. Therefore, based upon those reasons, 3106 clearly applies. Thank you very much. Thank you, Counsel. Mr. Chaddick. May it please the Court. Counsel. I think I want to start my presentation, my remarks today where Mr. Dunn started. He started with the point and the proposition that simply being within the confines of a public park is enough to trigger immunity. I absolutely disagree with that. I think the case law disagrees with that. What case? Well, I think every case has an individualized look at the particular structure that caused the injury. There's no case out there that says, oh, you're in a park, it's automatically immune. No. Each and every case involving some sort of recreational facility always looks at the particular structure, whether it be an accessibility ramp, sidewalk. I don't, unless we were to say our disagreement with Wallace, I don't understand how this case is distinguishable from Wallace. I think it's distinguishable for the reasons that Counsel said Judge Weber distinguished it. But more importantly, I went at it a different way in our brief. And I think if you look at the specific facts of Wallace, I think it's different. And here's how. In Wallace, the plaintiff suffered a fall on the pier or the dock of Navy Pier, of course. There was a great deal of individualized fact in the record there, specifically talking about all the activities that went on at Navy Pier. There's the carousel, et cetera. But actually on the pier, on the dock, in the area where she fell, there were street performers, mimes, bands that played, et cetera. She wasn't on a sidewalk or a walkway as we have in this case. It was the pier itself, the dock itself, and that was an area where these street performers, the mimes, recreation was encouraged. So had Angie been walking on a sidewalk within Navy Pier, they would have been liable. It may well have been different. I don't want to hear about it may well. I want to understand is it yes or no. They would have been liable? I think it would have been different. Yes, I do. I don't understand how that figures with the statute within the park. You know, it seems to me, and I should remind you, Counsel, in case you don't know. I was part of the panel that got reversed by the Supreme Court in Bubb. And it seemed to me the Supreme Court was telling us that, you know, legislation meant what they said. Well, if you look at Bubb, for example, look at the Rex Road case. Each of those cases specifically looked at the character, the nature, and the use of the particular area where the fall occurred. And, for example, in Bubb, as you'll well recall, there was an intent to use that portion of sidewalk for recreational purpose other than just foot traffic, other than just passage. If you'll recall, there was painted onto the sidewalk the area for the children's game, the four square or whatever it was called. And that was important in the court's holding saying, look, there is an intent of recreational use. There are characteristics of the walkway that demonstrate recreational use. And that's entirely missing from our case. There's no intent or characteristic that demonstrates recreational use. Had this restaurant been run by the Park District itself, would they be entitled to immunity in your judgment? I still think there's no immunity, and here's why. I think the walkway itself, based on the Rex Road case, the Adams-Zick case, and Bubb, the walkway itself is not recreational in nature. It's merely incidental. And that's why I cited the Rex Road and Adams-Zick cases, because they demonstrate there that the parking lots and walkways outside of various recreational facilities are incidental to the recreational function. This is within the park. Again, I guess that goes back to my initial disagreement with, I guess, both Mr. Dunn and the court, is that just being in the park I don't think is enough, because each of these cases have an individualized treatment of the structure. And if we were to say just being in the park was enough, then there would be no reason for the individualized consideration in these cases. And further, if we were to say just being in the park was enough, then there would be no need for this tangent of case laws to develop regarding the increased usefulness. The cases that are decided under increased usefulness say that there's a nonrecreational structure inside a recreational facility, and there may be immunity if that structure increases the value of the recreational... This was a... the beach house is located in Lake Decatur? Yes. So there's a beach there, and people can use the beach during the summer? I will take your word for it. Well, let's assume they... I think they can. I've been there. Let's assume someone's using, you know, lying on the beach and just enjoying a pleasant summer afternoon and decides that he needs to use the restroom. I mean, walks up the stairs and the same accident happens. Going to the restroom, which is just off the restroom. Presumably he's not wearing high heels when he's doing so. You know, that's a good... This is why it's a three-judge court. Let's assume she is going there wearing high heels with her bathing suit. Who knows? What about that situation? Everything else is the same. Is there... under that situation, is this covered by the Immunity Act? Still no immunity, and for the same reasons... And that brings me to another point I want to make, but still no immunity because, again, the walkway itself is incidental to both the recreational beach, under your hypothetical, and the recreational bathrooms and facilities. Certainly the bathroom is not recreational in and of itself, but I think the bathroom falls within that case precedent that says increase usefulness. If there was an injury in the bathroom, sure, that's something that increases the usefulness of the park. You mean to get to the bathroom doesn't increase the usefulness of the park? The bathroom itself does. I'm not willing to concede that the walkway, too... The restaurant was on the peak of a hill, and to get to the bathroom in the restaurant you had to use one of those swinging rope bridges. Any liability there? I think, to be consistent, I have to say that that's no immunity as well. I think, to be consistent in my argument, that I have to take the position that those walkways and paths that are not actually in the recreational facility itself, and in my hypothetical I'm calling the recreational facility the actual restaurant itself because I disagree that the entire park can be... Everything in the park is deemed recreational. To be internally consistent, I think I have to disagree with the court respectfully. I think that brings us to an important point about the record or lack thereof in this case. Other than calling this a park, there's almost no basis, no record, to assume that there is a beach, to assume what recreational activities do occur in the park. We just know it's a park, and so I think there is a little bit of a failure in the record to specifically demonstrate that this park in general is a recreational facility. And I think, going back to the case law, I think if you look at... So it's not necessarily a park? For all we know it's a branch of ADM? Is that the scope? That's not intention. That's not necessarily true, but I guess based on the record, that there is little in the record to suggest what recreational intent there is, what recreational purpose there is. And again, going back to the bug case, they said it's important to have facts to demonstrate the intent, recreational intent. We don't have that in this case. What we have is pavilion number three and a commercially run restaurant in pavilion number three and a walkway to pavilion number three. That's what we have in this case. And if you look at the retro case... How about the lease? Talking about the park district and the purpose and all that other good stuff and recreation, we can't consider that either? I think you can consider it. I don't think it's dispositive. I've seen no case that says the contract is dispositive. It's a park district contract. You better believe they're going to describe it in the manner that best helps them obtain a unit. So I think that's a red herring at best. Mr. Dunn is a very able lawyer. He's not citing a case to you to suggest that contract language is controlling. There's no case that suggests what the park calls it is gospel and that we have to take the naming of the facility by the park as a recreational facility. Again, if you look at every case, cases cited by Mr. Dunn, cases cited by myself, it's an individualized examination. Going back to where I was speaking of earlier, if you look at the cases, I think there's two things that every one of the cases look at to demonstrate whether or not there's a unit. It's character and location, character and location. In this case, as I've already stated and I don't want to be repetitive, there's nothing to demonstrate that this particular walkway was recreational in character. Nothing like in Babb where there was the forest first painted. Nothing like in Wallace where there was an indication that the street performers and the bands and the bicyclists and the rollerbladers used that particular area. There's no such evidence in the record in this case. I think we start with the presumption that it is not recreational in character. As far as location, I would suggest that location, it is outside of Pavilion Number 3. It's not within the recreational facility of Pavilion Number 3. For those reasons, I think it makes it very much akin to the Johnson case, the Adamczyk case, the Batson case, the Rexford cases that we've cited. I think it's important to note that if we are to give immunity to the sidewalks, to the walkways, the stairways, everything and anything inside the park, then there's the concern of the Batson Court that suggests that the immunity starts to eviscerate the actual duty to maintain the property. And that's where we're going if we're going to call every walkway or stairway protected by immunity. Now, for purposes of 3-103A, there's no dispute in the record that it's the park district's walkway or stairway. They're the ones that designed it, had it constructed. They're the ones that maintain it, even according to the contract. That's not the Beach House's obligation or duty. And we believe that 3-103A is controlling for several reasons. First, as I've already argued before, the walkway, the stairway is not recreational in nature, and therefore the immunity shouldn't apply. Secondarily, we have cited the Warner and McKinnon cases, which I think demonstrate that there should be viability for poorly designed municipal structures. And we have addressed Straub and Coltus, the cases primarily cited by the park district. Straub involved a guide wire, I believe, to a tree, but I don't remember exactly. I just remember it was a guide wire. It wasn't something that was a design defect type of case. And so that's why, in my view, that 3-103A did not apply. And in Coltus, there was actually recreation involved. There was sportive activity going on. And that's why the Coltus case is different from our case, where we just have the wooden stairway and wooden walkway. So for all of those reasons, we believe that the trial court's decision to deny the motion to dismiss was appropriate and that immunity should not apply. Thank you, counsel. Mr. Dutton, any rebuttal, sir? Okay. Mr. Chaddick's initial point was that no case holds. If you're automatically in a park, 3-106B would automatically be advised. I completely disagree, and I'll use his own case law to support that. That is exactly what the holding was in Caps and Batson. We talked a moment ago about the idea between bounded versus outside the property, and a quote from Batson, page 1080 in the Northeast. Such arbitrary decisions were certainly not the legislature's intention. The plain language of Section 3-106 contemplates a determination of immunity for bounded public property. For example, it is intended to afford immunity to a playground, including nonrecreational structures within it. That is the very language from Batson. That is consistent with every other case that has addressed 3-106. Again, I have my issues with whether the court is correct that it only applies, 3-106 only applies to bounded public property, but we don't need to resolve or address that today because there's no dispute and the record provides sufficient evidence that Pavilion No. 3 and the stairway attached to it is within the confines of Nelson Park. Therefore, even under Caps and Batson, the 5th District's view of 3-106 were absolutely within the intent of the statute as even the 5th District defined it. Is there any issue here as to whether or not we really have a park district property involved? No, there is no issue at all. I've heard Mr. Chaddick's discussion about that, and supposedly the record is deficient in that regard. I did hear that, Your Honor. I had a couple of points, but I jotted down quickly on that. One is it's the first time I've heard that argument, but I'm not going to say that waiver applies here. I'm saying it's the first time I've heard that argument. In fact, the reason why we're here on a 308 appeal is because there's no dispute as to the underlying facts and the parties in court have agreed that this is a controlling issue of law. No dispute as to the facts. The facts, because there is no dispute, are taken completely from the written agreements, which the court has referenced, which were attached to the third-party complaint. The pleadings, the initial complaint and the third-party complaint, both plead that this is a Park District-owned building within the confines of Nelson Park. I started off my argument at the very beginning, and I said we could stop right there, and based upon the plain language of 3106 in the case law, which is routinely and uniformly interpreted and applied, that is enough right there. Within a park, Park District-owned building, we're done. What those exhibits also establish, and again, going to the basis for a sufficient record to be able to apply 3106, is that you have the written agreement attached. The written agreement says several things. One, that the Park District owns the building. That's clearly in the written agreement. The next is that the Park District is going to lease it to the restaurant, and the restaurant is going to exist solely for the purpose of serving the public benefit and recreational interest at that park. In fact, it says this agreement is entered into subject to and limited by that principle. It couldn't be more clear. So that is a sufficient basis. The reason why basis becomes important, by the way, and as I touched on in my initial brief, is because as the Supreme Court has confirmed in Epstein and in Artiman and in other cases supplying or applying the Tort Immunity Act, the public entity has a duty from an affirmative defense standpoint and from a 2619A9 standpoint to establish that affirmative defense. The public entity can do that by several different ways. One is by the pleadings and the other is by evidence. Here we have the benefit that the pleadings incorporated evidence into them in terms of exhibits. So based upon that information, I had a sufficient basis to raise 3106 immunity, pursuant to 2619A9, and at that point the burden shifted to the Beach House. And I touched on this in my brief. I go back to I hadn't heard the argument before about insufficient evidence because the only arguments the Beach House raised when the burden shifted to the Beach House on the 2619 issue, application of 3106, was that there were legal questions or legal issues for why 3106 shouldn't apply, and they talked about those. The 3103 issue, Colties and Straub, Straub is this Court's own decision, Colties from the 2nd District. I digress for just a second. Let's take care of that. Both of those cases clearly hold no question. If you have 3106 property, 3106 is the more specific statute. Therefore, 3103 doesn't trump it and take away the immunity that's otherwise imposed by 3106. No case is ever held otherwise. Those are the two cases. No disputes to that. But that was one argument. It was a legal argument that was raised in response. It was not, and you don't have sufficient evidence. And the second argument was that we hadn't proved, we the Park District had not proved that recreation had occurred on this walkway. And that's where I went back to the whole panoply of cases that I cited, which says you don't have to show that recreation occurred on the specific area where the injury took place. That actually goes to, and it's actually an interesting question and analogy at the same time, which was, well, would we have the immunity if we made it into a recreation, a swinging rope across, or you had some kind of a toggle bridge or something. All of a sudden, we have the immunity, but if you made it a straight walkway, there's no immunity. That's exactly where that was going to as I interpreted it. No, the immunity doesn't switch on and off whether there's recreation on that specific wooden walkway. It's because the wooden walkway was within the confines of the park and supplies access to the recreational activity, which is the restaurant and pavilion number three. Thank you, counsel. Thank you. This meeting is adjourned. Thank you.